**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: ) <br> ) <br> CLAUDIA V. THOMPSON ) <br> ) <br> Debtor ) <br> ) | Chapter 13 <br> Case No. 17-11318-MSH |

**MEMORANDUM OF DECISION ON PLAN CONFIRMATION**

Claudia V. Thompson, the debtor in this case, filed a proposed chapter 13 plan on April 12, 2017, containing the following treatment of the secured claim of CIT Bank, N.A., holder of the first mortgage on her home in Malden, Massachusetts:

> Debtor is surrendering the property located at 36 Nichols Road, Malden, MA to Creditor effective July 1, 2019. Creditor's interest will be adequately protected in the form of post petition payments commencing May 2017 in the amount of $1,460.00 per month which includes escrow for taxes and insurance. Additionally, the Debtor and her father, Rogelio Duff, the contractual obligor on the mortgage with CIT Bank have a pending modification application which they expect to be allowed [multi-sic].

CIT objected to the plan's treatment of its claim on the basis that a chapter 13 plan calling for a deferred surrender of collateral violates the provisions of the Bankruptcy Code.[1] Before me is CIT's request that I deny confirmation of Ms. Thompson's plan.

Ms. Thompson's position is that Bankruptcy Code § 1325(a)(5)(C) recognizes surrender as an appropriate method for treating a secured party's claim in a chapter 13 plan, that this Code provision contains no express directive as to when surrender must occur, and that deferred surrender is consistent with the letter and spirit of chapter 13 in which most plans, including hers,

---

[1] All references to the Bankruptcy Code or Code refer to title 11 of the United States Code, 11 U.S.C. 101 *et seq*.

1

contemplate creditors' receiving their plan entitlements over an extended period of time. She explains that her ability to propose a feasible chapter 13 plan depends on her ability to remain in her home post-confirmation because her costs in mortgage payments and upkeep will be less than what she would have to pay to move and rent an apartment in the school district where her son attends high school. Ms. Thompson has tied the surrender date in her plan to her son's graduation, at which point she would presumably relocate to rental housing in a more affordable neighborhood.

In order to resolve the parties' dispute and determine whether Ms. Thompson's deferred surrender plan is confirmable under § 1325(a)(5)(C), it is necessary first to understand what surrender means in the context of bankruptcy. The Bankruptcy Code contains a number of relevant provisions.

Code § 521 lists the duties of an debtor when a bankruptcy case is filed. Under subsection (a)(2), an individual chapter 7 debtor is given three choices, and only three choices, for dealing with secured property—redeem the property from the secured creditor by way of a cash payment, reaffirm the debt to the secured party and pay it according to agreed-upon terms, or surrender the property.[2] *See In re Burr*, 160 F.3d 843, 844 (1st Cir. 1998). The chapter 7 debtor

---

[2] Subsection (a)(2) provides:
   (a) The debtor shall— . . .
      (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
         (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

2

has 30 days from case commencement to formally declare her choice by filing a statement of intention under § 521(a)(2)(A) and 30 days from the first meeting of creditors to perform her choice under § 521(a)(2)(B).

Subsection (a)(6) of § 521 takes matters one step further when personal property secured by a purchase money security interest is involved.[3] It provides for self-activating stay relief when an individual chapter 7 debtor fails to reaffirm or redeem within 45 days of the first meeting of creditors.

Finally, Code § 362(h) provides, with respect to personal property collateral, that a debtor's failure to reaffirm, redeem, or surrender within the time required by § 521(a)(2)(A) and (B) automatically terminates the stay and takes the property out of the bankruptcy estate.[5]

---

      (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;
   except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

[3] Section 521(a)(6) states:
   (a) The debtor shall—
      (6) [I]n a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—
         (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
         (B) redeems such property from the security interest pursuant to section 722.

[5] Section 362(h) provides:
   (1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—
      (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor

3

In chapter 13, a debtor owning encumbered property need not file a statement of intention, but instead must file a chapter 13 plan which accomplishes much the same thing. Bankruptcy Code § 1325(a)(5) is the practical equivalent of § 521(a)(2). It provides for plan confirmation if:

> (5) with respect to each allowed secured claim provided for by the plan—
>   (A) the holder of such claim has accepted the plan;
>   (B)
>     (i) the plan provides that—
>       (I) the holder of such claim retain the lien securing such claim until the earlier of—
>         (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>         (bb) discharge under section 1328; and
>       (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>     (iii) if—
>       (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

---

    will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
  (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.
(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C) *the debtor surrenders the property securing such claim to such holder* (emphasis added).

So while a chapter 7 debtor must promptly decide whether to redeem, reaffirm or surrender, a debtor in chapter 13 must propose a plan that either receives the secured creditor's acceptance or pays the creditor over the life of the plan the allowed amount of its secured claim, and if neither of those possibilities can be achieved, the debtor must surrender the property to the secured creditor.

Interestingly, while the Code is replete with requirements for surrendering property and the penalties for failing to do so, it nowhere defines the term surrender. The United States Court of Appeals for the First Circuit has defined surrender for purposes of § 521(a)(2) as the debtor's "agree[ing] to make the collateral available to the secured creditor—*viz.*, to cede his possessory rights in the collateral . . ." In re Canning, 706 F.3d 64, 69 (1st Cir. 2013) (quoting *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006)). The *Canning* Court continued: "The secured creditor, however, has the prerogative to decide whether to accept or reject the surrendered collateral . . ." *Id.* at 69-70. As a practical matter, therefore, until the secured creditor decides whether to accept or reject surrendered real estate collateral, something secured creditors often seem to have difficulty doing, debtors tend to stay put.

In response to the statutory and decisional authority, it has become the rule rather than the exception in chapter 7 consumer bankruptcy cases in this district for a debtor to state his intention to surrender a home and then do nothing further to effectuate surrender. Often he occupies the property (sometimes making current mortgage payments, sometimes not) until the mortgage lender takes steps to exercise its rights—typically by filing a motion for stay relief in

5

order to foreclose and evict. Ms. Thompson's plan exemplifies how this reality has found its way into chapter 13.

Having assembled the necessary statutory and interpretive tools, all that remains is to deploy them to untangle the dialectical knot presented by Ms. Thompson's proposed chapter 13 plan. As indicated previously, the plan provides that the collateral securing CIT's claim will be surrendered effective July 1, 2019, and until that time Ms. Thompson will make regular monthly mortgage payments, including real estate taxes and insurance, to the bank. CIT objects.

Since CIT rejects Ms. Thompson's plan treatment, she cannot satisfy the first of her three options for achieving plan confirmation—the secured party's acceptance under Code § 1325(a)(5)(A). Further, her plan does not qualify for confirmation over CIT's objection under the second option, § 1325(a)(5)(B), requiring that CIT be provided over the life of the plan with property having a value, as of the effective date of the plan, not less than the allowed amount of its claim. That would require Ms. Thompson to pay CIT in full, including its substantial pre-petition arrearage, over the life of the plan, because as the holder of the first mortgage on Ms. Thompson's home, CIT's claim cannot be modified. *See* 11 U.S.C. § 1322(b)(2). If anything, under § 1325(a)(5)(B), the treatment of CIT's claim in Ms. Thompson's plan would appear to amount to a modification of its claim in violation of § 1322(b)(2).

That leaves the third option—surrender under § 1325(a)(5)(C)—the point of contention between Ms. Thompson and CIT. The structure of § 1325(a)(5) plays a critical role in understanding how to correctly apply the surrender option. Section 1325(a)(5) does not, as many might reflexively assume, contain a list of plan provisions for the permissible treatment of a secured party's claim. It contains a list of what a debtor must achieve in order to gain confirmation of a plan that treats a secured claim. Only § 1325(a)(5)(B) involves a plan

6

provision. Subsections (A) and (C) of § 1325(a)(5) require the debtor to either obtain the lender's consent or surrender to the lender its collateral. These are actions, not plan provisions. Furthermore § 1325(a)(5)(C) is written in the present tense—"the debtor *surrenders* the property securing such claim to such holder." 11 U.S.C. § 1325 (emphasis added).[6] Thus, under the statute's plain language, a surrender a year-and-a-half in the future is not a surrender under § 1325(a)(5)(C). As Judge Bailey of this court held in *In re Tosi*, 546 B.R. 487, 492 (Bankr. D. Mass. 2016):

> When the plan proposes that the debtor will retain the creditor's collateral for a period of time, the plan impairs the creditor's state law rights by preventing the creditor from exercising them during that period. The retention of collateral for any length of time is inconsistent with the surrender and takes the plan out of the operation of that subsection.

The United States Court of Appeals for the Fourth Circuit has similarly found that because § 1325(a)(5)(C), unlike § 1325(a)(5)(B), "does not reference the plan" and does not "permit[] a plan to be approved based on the plan's provision for payments to the secured creditor," "[a] fair reading of § 1325(a)(5)(C) is . . . that the surrender must be completed *at or before* the confirmation of the plan." *In re White*, 487 F.3d 199, 207 (4th Cir. 2007) (emphasis in original) (citing *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 533 n. 8 (6th Cir. 2000) ("We note that 11 U.S.C. § 1325(a)(5)(C) apparently does allow a surrender of collateral, but only pre-confirmation.") and *Collier on Bankruptcy* ¶ 1325.06[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005) ("A fair rendition of section 1325(a)(5)(C) requires that the surrender of the collateral occur before or at confirmation, or at the effective date of the plan.")). The *White* Court elaborated:

---

[6] Other subsections of § 1325 are not written in the present tense. *See, e.g.*, § 1325(a)(2) ("[A]ny fee, charge, or amount required . . . to be paid before confirmation, *has been paid*") (emphasis added); *see also* § 1325(a)(6) ("[T]he debtor *will be able* to make all payments under the plan . . .") (emphasis added).

7

> If a secured creditor is legally foreclosed from immediately obtaining the property that a debtor proposes to surrender and the debtor does not in fact voluntarily relinquish all rights in the property, including the right to possession, to the secured creditor, then the debtor can in no way be said to have "surrendered" any of his rights in the property. *Id.*

According to the *White* Court, not only are surrender and retention "not equivalent acts" as the Supreme Court stated in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997), but they are "altogether contrary." *Id.* at 207-08.

That deferred surrender is inimical to the act of surrender embedded in the Bankruptcy Code finds further support in § 521(a)(2). As discussed previously, § 521(a)(2) requires chapter 7 debtors to declare their intentions with respect to a secured creditor's collateral early in the case and then to promptly perform that intention. To reinforce the message that surrender means surrender now, §§ 362(h) and 521(a)(6) provide, with respect to personal property collateral, for the automatic stay with respect to such property to be terminated if the chapter 7 debtor fails to file her statement of intention or perform her intention within the limited time provided in § 521(a)(2).

One might be tempted to argue that because §§ 362(h) and 521(a)(6) are by their express terms limited to personal property in the chapter 7 context, Congress intended to exclude real estate in the chapter 13 context from the draconian consequences of untimely reaffirmation, redemption or surrender, thereby paving the way for deferred surrender of real estate in chapter 13. Such a negative inference, which stretches the principles of statutory interpretation beyond recognition, leaves too thin a reed upon which to support Ms. Thompson's plan.

Beyond the statute, recent amendments to the Federal Rules of Bankruptcy Procedure reflect an approach to the act of surrender consistent with the Code's emphasis on alacrity. Even though Ms. Thompson's plan predates these amendments, they are nevertheless instructive in offering insight into how the Rules Committee understood surrender in the context of chapter 13

8

plans. New Rule 3015.1(d)(4), which took effect on December 1, 2017, requires that any local form chapter 13 plan adopted in lieu of the standard national form (Official Form 113), like the national form itself, contain a separate paragraph for "surrendering property that secures a claim *with a request that the stay under §§ 362(a) and 1301(a) be terminated as to the surrendered collateral*." Fed. R. Bankr. P. 3015.1(d)(4) (emphasis added).

Our district has adopted its own local form chapter 13 plan (Official Local Form 3 as promulgated by the court's Standing Order 2017-05), which contains the required provision in Part 3.C of the plan form. While it is true that the stay relief component of a plan's surrender provision can be modified or even nullified by adding appropriate language in the non-standard provisions of the plan, *see* Fed. R. Bankr. P. 3015(c), the fact that the "default" surrender provision must include the stay relief language reflects the Rule drafters' view that surrender should not be a protracted process.

Having failed to satisfy any of the three options available under § 1325(a)(5) for treating CIT's secured claim in this chapter 13 case, CIT's objection to Ms. Thompson's proposed chapter 13 plan must be sustained and plan confirmation denied. An order consistent with this memorandum shall issue.

Dated at Boston, Massachusetts this 14th day of February, 2018.

By the Court,

*[signature]*

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

9

Counsel Appearing:   John F. Sommerstein, Esq.
                     The Law Offices of John F. Sommerstein
                     Boston, Massachusetts
                       for the debtor, Claudia V. Thompson

                     Joseph M. Dolben, Esq.
                     Marinosci Law Group, P.C.
                     Warwick, Rhode Island
                       for creditor CIT Bank, N.A.